IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:23-cr-00088 |
| v. | ) | |
| | ) | CHIEF JUDGE CAMPBELL |
| OLEKSII OLEKSIYOVYCH LYTVYNENKO | ) | |
| a/k/a ALEXSEY ALEXSEEVICH LITVINENKO | ) | |

PLEA AGREEMENT

The United States of America, by and through Braden H. Boucek, United States Attorney

for the Middle District of Tennessee, and Assistant United States Attorney Taylor J. Phillips, and

Trial Attorney Sonia V. Jimenez of the Department of Justice's Computer Crime and Intellectual

Property Section of the Criminal Division, and the defendant, Oleksii Oleksiyovych Lytvynenko,

by and through the defendant's counsel, Jessica Marie Dragonetti and William Gilbert

Allensworth, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, have

entered into an agreement, the terms and conditions of which are as follows:

Charges and Penalties in This Case

1.      The defendant has been charged in the Indictment in this case with the following

offenses:

a.      Count One: Conspiracy to violate the Computer Fraud and Abuse Act, in

violation of Title 18, United States Code, Section 371. Count One carries a maximum

penalty of five years' imprisonment, three years of supervised release, and a $100 special

assessment.

b.      Count Two: Conspiracy to commit wire fraud, in violation of Title 18,

United States Code, Section 1349. Count Two carries a maximum penalty of twenty years'

1

imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment.

2.      As a result of the defendant's offenses, the defendant is subject to forfeiture of property as alleged in the Indictment.

3.      The defendant must pay upon conviction a $100 special assessment for each felony count to which the defendant pleads guilty, pursuant to Title 18, United States Code, Section 3013.

4.      As part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order the defendant to pay restitution to any victim of the offense, as required by law.

5.      The defendant has read the charges against the defendant contained in the Indictment. Those charges have been fully explained to the defendant by the defendant's attorney. The defendant fully understands the nature and elements of the crimes with which the defendant has been charged.

<u>Charge to Which the Defendant is Pleading Guilty</u>

6.      By this Plea Agreement, the defendant agrees to enter a voluntary plea of guilty to Count Two of the Indictment. In addition, as further provided below, the defendant agrees to entry of a forfeiture judgment. After sentence has been imposed on the count to which the defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count in the Indictment.

<u>Factual Basis</u>

7.      The defendant will plead guilty because the defendant is in fact guilty of the charge contained in Count Two of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish the defendant's guilt beyond a reasonable doubt:

Beginning no later than in or about 2020 and continuing thereafter until at least in or about June 2022, cybercriminals conspired to attack businesses, nonprofits, and governments in the United States and around the world using malicious software known as "Conti," a type of ransomware. In furtherance of the scheme, the conspirators hacked into victims' computer networks and copied the victims' data to the conspirators' own computers. The conspirators then encrypted the victims' data, which prevented the victims from accessing their own files. The conspirators typically then demanded a ransom to restore the victims' access to their files and to prevent the conspirators from publicly disclosing the hack and releasing the victims' stolen data to the internet.

Different conspirators had different roles in the conspiracy, including: (1) developing Conti ransomware; (2) "crypting" Conti ransomware so that it would evade detection by anti-virus programs; (3) managing teams of hackers; (4) gaining initial access to victims' networks; (5) deploying Conti ransomware on victims' networks; and (6) negotiating with victims.

Conti conspirators developed Conti ransomware no later than 2020. After that, the Conti conspirators released at least three different versions of the Conti ransomware. Conti conspirators identified potential victims and searched for vulnerabilities in victims' networks. After identifying those vulnerabilities, Conti conspirators hacked into (i.e., accessed without authorization) the networks of victims. Once inside victims' networks, Conti conspirators sought to obtain persistent remote access to the networks, move laterally (i.e., access other systems within the computer or network), and escalate privileges (i.e., gain greater authority over the computer or network). In doing so, the Conti conspirators made materially false and fraudulent pretenses or representations to the victims' computer network and systems; that is, that they were legitimate possessors of the administrative credentials necessary to make such movements within the victim network, which was not true, for the purpose of defrauding the victims out of money.

After gaining sufficient privileges to the victims' networks, Conti conspirators stole victim data and deployed Conti ransomware, by transmitting it to the victims' computer(s). As part of the deployment of Conti ransomware, the victims' files were encrypted and the ransomware left a ransom note in the form of a text file on the victims' computers. Many versions of the note stated, in part, "if you don't [know Conti] - just 'google it.'" The note typically also demanded that the victims access a Tor website address for "further instructions." That Tor website directed victims to upload their ransom note, which permitted them to engage in text negotiations with Conti conspirators. Conti conspirators who negotiated with victims typically provided victims with a cryptocurrency address for the payment of the demanded ransom.

Beginning in or about December 2020, if victims did not quickly engage in ransom negotiations, Conti conspirators began publishing portions of the victims' stolen data to a Tor website, and threatened to publish more if the victims did not

3

pay the ransom. Victims who paid the ransom typically received a decryption key and their stolen files were not further published. Conti conspirators typically published the data of victims who did not pay the ransom.

Hacking into and deploying the Conti ransomware resulted in damage to the victims' computers, which were protected computers, during a 1-year period aggregating at least $5,000.00 in value to the victims' computers.

In short, the Conti conspirators sought to enrich themselves by developing Conti ransomware, identifying vulnerabilities in victims' networks, and exploiting those vulnerabilities to access victims' computers without authorization; stealing victims' data; installing and executing Conti ransomware on victims' computers, resulting in the encryption of the data on those computers; extorting victims by demanding a cryptocurrency ransom in exchange for: a decryption key for the encrypted data; a promise not to publicize the breach of victims' networks on a Tor website operated by Conti conspirators; and a promise not to publicly release victims' stolen data on the same Tor website; and collecting payments from victims and dividing those payments among Conti conspirators.

To accomplish the objects of the conspiracy, the Conti conspirators used material misrepresentation or concealment of material facts (namely, falsely representing that they were authorized to access victims' computer systems when they were not) and they specifically intended to defraud their victims of money or property. Many (if not all) of the Conti conspirators, including the defendant, committed their activities in furtherance of the Conti conspiracy from outside the United States and they used wire communications in foreign commerce in furtherance of the scheme to defraud.

Conti conspirators claimed attacks on numerous victims, including many in the United States. Among others, they attacked:

    a. Victim 1: a government entity located in the Middle District of Tennessee;
    b. Victim 2: a business located in the Middle District of Tennessee; and
    c. Victim 3: a business located in the Middle District of Tennessee.

The defendant knowingly and voluntarily joined the Conti conspiracy no later than approximately September 2021. The defendant's Gmail account, including a Google Drive account, connected the defendant to data stolen by Conti conspirators from eight U.S. victims and four overseas victims. The eight U.S. victims reported losses totaling at least $1,511,634.96. The defendant used his Google account to search zoominfo.com for information about potential victims. He also used his Google account to store: Conti ransomware notes associated with specific victims; various pieces of malware, including the Conti malware; and instruction books and videos related to malware and hacking. The defendant also used Mega.NZ – a New Zealand-based online file-hosting service – to store data stolen from Conti victims.

Further, while using the moniker "henry," the defendant joined the team of a co-conspirator using the moniker "silver" (also known as "buza") to assist with coding efforts by the Conti conspirators. Specifically, the defendant was directed to work on coding a "loader," which is typically a type of malware, or malicious software, that is used to load programs necessary to execute other malicious attacks.

As compensation for his work with the Conti conspirators, the defendant received cryptocurrency payments to the cryptocurrency address 1413UKpEBZ9XTojkv37n9pyikS8AJXTvCW, which was associated with a Binance account in the defendant's name. Those payments included the following:

- .4 BTC, worth approximately $25,042 at the time of transaction, deposited into the defendant's Binance account on or about October 29, 2021, which originated from one of the defendant's victims;
- 0.025 BTC from bclqq70wpydlpy6yt8jcgr79v3xyp4gm2hz6z2wgj7 on or about July 29, 2021;
- 0.021 BTC from bclq9g2fc3v5jluzk9nma78u8s7tc8zx73gsg3gf86, a cryptocurrency address associated with Conti conspirators, on or about August 14, 2021;
- 0.031 BTC from bclqr5gzpnyvzf6403432e9qlmvu6gkxjcl2jnyynm, a cryptocurrency address associated with Conti conspirators, on or about September 16, 2021; and
- 0.015 BTC from bclq5sztpwqw57n6vwxtcm47xc3qw8jk7cd7dezrx4, a cryptocurrency address associated with Conti conspirators, on or about October 18, 2021.

At the time of the defendant's arrest on or about July 6, 2023, in County Cork, Ireland, the defendant had in his possession a laptop which was open and operating Cobalt Strike, among other processes. Cobalt Strike is a legitimate software commonly used for illegitimate purposes by cybercriminals to facilitate ransomware attacks. The computer was also running an active instance of Rocket.Chat, a chat-based communication applicant hosted on the Tor network, a computer network designed to facilitate anonymous communication over the internet. The Rocket.chat application and Cobalt Strike connections revealed the defendant's involvement in multiple intrusions of third-party corporate and municipal computer networks, including computer networks in the United States. The defendant's laptop also included multiple remote desktop protocol artifacts which indicated lateral movement on victim networks, consistent with ransomware activity. The laptop also included Google searches related to mimikatz, an open-source tool commonly used by cybercriminals, including ransomware actors, to facilitate stealing credentials later used in ransomware attacks.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for the defendant's plea of guilty and criminal forfeiture. The statement of facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's and/or others' involvement in the offense conduct and other matters.

<u>Acknowledgement and Waivers Regarding Plea of Guilty: Trial Rights</u>

8.     The defendant understands that by pleading guilty the defendant waives and surrenders certain trial rights, including the following:

a.     If the defendant persisted in a plea of not guilty to the charge, the defendant would have the right to a public and speedy trial. The defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if the defendant, the government, and the Court all agreed to have no jury.

b.     If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. The defendant and the defendant's attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. At trial, the jury would be instructed that the defendant is presumed innocent; that the government bears the burden of proving the defendant guilty of the charge beyond a reasonable doubt; and that the jury must consider each count of the Indictment against the defendant separately.

c.     If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of the defendant's guilt beyond a reasonable doubt.

d.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those government witnesses, and the defendant's attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on the defendant's own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e.  At a trial, the defendant would have the right not to testify, and no inference of guilt could be drawn from the defendant's refusal to testify.

f.  Prior to trial, the defendant would have the right to obtain discovery from the government for use at trial, including statements of the government's witnesses.

9.  The defendant understands that, by pleading guilty, the defendant is waiving all of the trial rights set forth in the prior paragraph. The defendant's attorney has explained those rights, and the consequences of the defendant's waiver of those rights, to the defendant.

<u>Sentencing Guidelines Calculations</u>

10.  The parties understand that the Court is required to consider the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at Title 18, United States Code, Section 3553(a), in determining the defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective at the time of sentencing.

11.  For purposes of determining the U.S.S.G. advisory guidelines range, the United States and the defendant agree to the following calculations and agree that these stipulations will bind the district court pursuant to Rule 11(c)(1)(C) if it accepts this plea agreement and agree that

7

they will not seek to apply or advocate for the use of any other base offense level(s) or any other specific offense characteristics, enhancements, or reductions in calculating the advisory guidelines range except as expressly noted in the following paragraphs:

    a.    <u>Offense Level Calculations.</u>

    i.    The base offense level for Count Two is 7, pursuant to U.S.S.G. § 2B1.1(a)(1), because the defendant was convicted of an offense referenced to that guideline and the offense of conviction has a statutory maximum term of imprisonment of 20 years or more;

    ii.    An enhancement of 16 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(I), because the loss foreseeable to the defendant exceeded $1,500,000;

    iii.    An enhancement of 2 levels is applicable pursuant to U.S.S.G. § 2B1.1(b)(2) because the offense involved ten or more victims;

    iv.    An enhancement of 2 levels is applicable pursuant to U.S.S.G. § 2B1.1(b)(10)(B) because a substantial part of the fraudulent scheme was committed from outside the United States;

    v.    A reduction of 2 levels is applicable pursuant to U.S.S.G. § 4C1.1 because the defendant is a qualifying zero-point offender;

    vi.    Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through the defendant's allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). If the defendant qualifies for a decrease under U.S.S.G. § 3E1.1(a), has an offense level of 16 or

more prior to the operation of U.S.S.G. § 3E1.1(a), and has given timely notification of the defendant's intention to enter a plea of guilty, the United States will move for an additional one-level decrease in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1(b).

Therefore, assuming that the defendant clearly demonstrates acceptance of responsibility to the satisfaction of the government, the parties agree, pursuant to Rule 11(c)(1)(C), that the defendant's final offense level is 22 (the "Recommended Offense Level").

      b.    Criminal History Category.

      i.    The parties have no agreement regarding the defendant's Criminal History Category. The parties are unaware of any prior convictions and anticipate that the defendant is in Criminal History Category I.

      c.    Recommended Guidelines Range.

      i.    The Recommended Offense Level, when combined with the defendant's anticipated Criminal History Category, results in a recommended advisory guidelines range of 41 to 51 months of imprisonment (the "Recommended Guidelines Range").

12. The defendant understands that the offense level as ultimately determined by the Court (the "Court-determined Offense Level") may be different than the Recommended Offense Level. The defendant likewise understands that the guidelines range as ultimately determined by the Court (the "Court-determined guidelines range") may be different than the Recommended Guidelines Range. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), however, if the Court accepts this plea agreement, it will be obligated to follow the parties' stipulated offense level and impose an agreed-upon sentence of between 41 and 51 months.

13. The defendant is aware that any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court. The defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculation, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the Probation Office.

14. The parties acknowledge that the presentence investigation report will contain a recommended offense level and criminal history calculations under the Guidelines and that the court must perform a guideline calculation as part of the sentencing process. However, because this agreement is a binding agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that the sentencing range agreed to herein is an appropriate sentencing range regardless of the guideline calculation.

Agreements Relating to Sentencing

15. Sentencing Recommendation. This Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed to recommend that the sentence imposed by the Court shall include a term of imprisonment of between 41 and 51 months (the Recommended Guideline Range) in the custody of the Bureau of Prisons. Other than an agreed range for the term of imprisonment, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes a sentence within the

10

Recommended Guideline Range, the defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d). If, however, the Court refuses to impose a sentence within the Recommended Guideline Range, thereby rejecting the Plea Agreement, or otherwise refuses to accept the defendant's plea of guilty, either party shall have the right to withdraw from this plea agreement. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

### Restitution and Fines

16.     Restitution. Pursuant to Title 18, United States Code, Section 3663A, the Court must order the defendant to make restitution in an amount determined by the Court, minus any credit for funds repaid prior to sentencing.

17.     Pursuant to Title 18, United States Code, Section 3572, all monetary penalties, including restitution imposed by the Court, shall be due and payable immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the defendant is unable to pay immediately, then the defendant agrees to the imposition of a schedule of payments established at sentencing. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce a judgment.

18.     The defendant agrees to cooperate with the United States Attorney's Office in

11

collecting any unpaid fine and restitution for which the defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

Forfeiture

Forfeiture in the Form of a $25,042 Money Judgment

19.  The defendant acknowledges that the defendant obtained $25,042 in proceeds of the offenses of conviction, and that as a result of the defendant's acts or omissions, the actual proceeds of the offenses are not available for forfeiture. The defendant therefore consents to entry of a forfeiture money judgment in the amount of $25,042.

20.  As provided in Title 21, United States Code, Section 853(p), the defendant acknowledges that the United States is entitled to forfeiture of substitute property up to the value of the money judgment entered pursuant to this agreement.

General Forfeiture Terms

21.  The defendant waives any defect in or failure of notice in the charging instrument, inclusion in the judgment, and any other procedural requirements of Fed. R. Crim P. 32.2.

22.  The defendant will cooperate with the United States in all forfeiture-related matters. This cooperation will include, but not be limited to: (a) truthful testimony; (b) consent to discovery concerning property involved in the offense and the defendant's assets; (c) execution of documents required to effect this agreement, including transfers of substitute assets; (d) the production or release of tax information, returns, or other financial documents concerning the defendant; and (e) repatriation of any proceeds of the offense held outside the United States.

23.  Unless otherwise specifically agreed, the defendant relinquishes all claims or disputes in any administrative or civil forfeiture proceeding arising from the facts and circumstances at issue in the criminal case.

12

24.     The U.S. Probation and Pretrial Services Office may release the Presentence Investigative Report to the Asset Forfeiture Unit of the United States Attorney's Office.

25.     Forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose. The United States will seek approval from the Money Laundering, Narcotics and Forfeiture Section of the U.S. Department of Justice ("MNF") via the processes outlined at 28 C.F.R. § 9 and Title 18, United States Code, Section 3664, for any forfeiture payment to be credited toward any restitution obligation imposed in this matter. However, the ultimate discretion to grant or deny such requests lies with MNF.

<u>Presentence Investigation Report/Post-Sentence Supervision</u>

26.     The defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Presentence Investigation Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of the defendant's conduct regarding the charges against the defendant, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

27.     The defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of the defendant's financial circumstances, including the defendant's recent income tax returns as specified by the Probation Office. The defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of

the defendant's sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

Consequences of Certain Convictions: Immigration Consequences

28. The defendant agrees to consent to removal from the United States upon completion of the defendant's sentence, to waive all rights relating to any and all forms of relief from removal or exclusion, to abandon any pending applications for such relief, and to cooperate with the Department of Homeland Security during removal proceedings.

Waiver of Appellate Rights

29. Regarding the issue of guilt, the defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether the defendant is guilty of the crime(s) to which the defendant is agreeing to plead guilty; and (ii) trial rights that might have been available if the defendant had exercised the right to go to trial. Regarding sentencing, the defendant is aware that Title 18, United States Code, Section 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within or below the Recommended Guidelines Range. The defendant further waives all appellate rights and collateral attacks concerning forfeiture and all matters related thereto. The defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to Title 18, United States Code, Section 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to Title 28, United States Code, Sections 2255 and/or 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence within or above the Recommended Guidelines Range.

14

Other Terms

30.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against the defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and the Computer Crime and Intellectual Property Section of the U.S. Department of Justice and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, including Immigration and Customs Enforcement, except as expressly set forth in this Plea Agreement.

31.     Should the defendant engage in additional criminal activity after the defendant has pled guilty but prior to sentencing, the defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

Conclusion

32.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and the defendant regarding the defendant's criminal liability in Case No. 3:23-cr-00088.

33.     The defendant and the defendant's attorney acknowledge that no threats have been made to cause the defendant to plead guilty.

34.     No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

15

35. The defendant understands that the Indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person. If the defendant moves to file this Plea Agreement under seal, the defendant consents to the disclosure of the Plea Agreement as required by the United States' discovery obligations.

36. The defendant understands that the defendant's compliance with each part of this Plea Agreement extends until such time as the defendant is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. The defendant further understands that in the event the defendant violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Plea Agreement, or may require the defendant's specific performance of this Plea Agreement. The defendant understands and agrees that in the event that the Court permits the defendant to withdraw from this Plea Agreement, or the defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

37. The Defendant's Signature: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending Indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement (or had it translated into a language in which I am fluent) and

16

have carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and

I voluntarily agree to it.

Date: 6/10/26

_____
Oleksii Oleksiyovych Lytvynenko
The Defendant

17

38.     Defense Counsel Signature: I am counsel for the defendant in this case. I have fully explained to the defendant the defendant's rights with respect to the pending Indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to the defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with the defendant. To my knowledge, the defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 6/10/26

Jessica Marie Dragonetti
Attorney for the Defendant

William Gilbert Allensworth
Attorney for the Defendant

Respectfully submitted,

BRADEN H. BOUCEK
United States Attorney

By:

Taylor J. Phillips
Assistant U.S. Attorney

J. Christopher Suedekum
Deputy Criminal Chief

Sonia V. Jimenez
Trial Attorney
Computer Crime and Intellectual Property Section

18